**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

LARRY DEAN,

      Plaintiff,

v.                                  Case No. 22-cv-00179-MLG-LF

UNITED STATES OF AMERICA,

      Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
DISMISS AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Larry Dean broke his leg while working for XL Scientific, LLC (a.k.a. VERUS Research), when assisting with research testing in an anechoic chamber on the United States Kirtland Air Force Base ("Kirtland"). He sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, alleging the government was responsible for his injury. *See* Doc. 1. Specifically, Dean claims the United States owed him a duty to exercise care to keep the premises safe for his use, including inspecting the chamber for potential harm and warning him of dangerous conditions but failed to do so. *Id.* at 4-5. The United States disagrees and has challenged the viability of Dean's negligence claim through two separate motions—a motion to dismiss and another for summary judgment.

In its motion to dismiss, the United States asserts Dean failed to provide the government sufficient notice of his negligence action in his administrative claim. Doc. 64 at 6-12. Through its motion for summary judgment, the United States maintains Dean's claim is not encompassed by the FTCA because, under New Mexico law, a private person would not be liable for Dean's harm. Doc. 51 at 13-17. As explained below, the Court concludes Dean's administrative claim provided sufficient factual detail to notify the United States of a future negligence action, but the United

States did not owe Dean a duty of care due to its lack of control of the chamber and VERUS's work as an independent contractor. The Court therefore denies the United States' motion to dismiss, Doc. 64, but grants its motion for summary judgment. Doc. 51.

**BACKGROUND**

## I.       Undisputed Material Facts ("UMFs")[1]

Dean was injured when working inside the anechoic chamber located in the Carlisle Building 323, which was owned and operated by the United States Air Force ("Air Force") at Kirtland.[2] Doc. 1 ¶¶ 8-18; UMFs 1-2, 11; Doc. 52 at 2-3; Doc. 57 at 3. During the pendency of the events giving rise to this litigation, Dean was employed by VERUS as a Radio Frequency Test Technician on an Air Force Research Laboratory ("AFRL") funded project.[3] Doc. 1 at 2 ¶¶ 9-10; UMF 1-2. VERUS contracts with the AFRL as part of the company's efforts to assess the effects of high-powered electromagnetic waves on various technologies. UMFs 6-7. VERUS uses the AFRL's anechoic chamber for those experiments. UMF 7.

### A.       Contract Between AFRL and VERUS

The contract between AFRL and VERUS defined the scope of the parties' responsibilities with respect to the work itself and the conditions of the chamber. *See* Docs. 51-8, 51-9. Many of

---

[1] The Court has determined the relevant facts based on the parties' submissions, while omitting extraneous detail, party arguments, and facts not supported by the record. The United States' asserted material facts are largely admitted by Dean. Disputes concerning the facts are noted where relevant. UMFs are located in Doc. 51 at 3-10.

[2] Dean has already received compensation from VERUS's workers compensation insurer, so he only brings his negligence claim against the United States. *See* Doc. 64 at 2.

[3] Given that employment relationship, it was VERUS (and not the AFRL) that directed and supervised Dean's activities while he worked in the chamber. UMF 18. Further, Dean never interacted with AFRL employees nor was he aware of what work they were conducting. UMFs 37, 39-40; see Doc. 77 at 24:1-16.

2

the contract's material terms were memorialized in two documents: the Indefinite Delivery Indefinite Quantity ("IDIQ") and the Task Order. *See* Docs. 51-8, 51-9. The IDIQ detailed the work VERUS was to perform.[4] UMF 8; Doc. 51-9 at 15-25. That document vested VERUS with the duty to "[t]ake all reasonable steps and precautions to prevent accidents and preserve the health and safety of contractor and Government personnel performing or in any way coming in contact with the performance of this contract." DAFFARS § 5352.223-9001(a)(1); Doc. 51-9 at 9 ¶ C. VERUS was also required to comply *inter alia* with federal, state, and Air Force-related safety regulations and report "all mishaps (to include personal injuries and damage to Government property or equipment) that occur[ed] as a result of the contractor's activities[.]" Doc. 51-9 at 24 ¶ 12; *see* Doc. 51-8 at 25 ¶ 10 (Task Order). As Jennifer Jaramillo, who served as the contracting officer for the Air Force, explained, "whatever party is using the lab and running the test or experimentation, they are responsible for reporting inadequacies and they are . . . responsible for the health and safety and the maintenance of the lab." Doc. 51-7 at 10 (38:13-16).

The IDIQ also defined "base support," or how VERUS may use the space and facilities in connection with its research:

> Use of AFRL test facilities may be provided by the Government to the contractor. . . . The contractor may use AFRL base support on a rent-free, non-interference basis. Use of AFRL base support include facilities (space and equipment). . . .
>
> The contractor will immediately report inadequacies, deficiencies, or non-availability of support[.]

---

[4] The IDIQ incorporates several regulations and additional clauses pertaining to the project, including Federal Acquisition Regulation Contract Clauses ("FARS"), Defense Federal Acquisition Regulation Supplement Contract Clauses ("DFARS"), and the Department of the Air Force Federal Acquisition Regulation Supplement Contract Clauses ("DAFFARS"). *See* Doc. 51-9 at 9-10; DAFFARS § 5352.223-9001, available at https://www.acquisition.gov/daffars/part-5352-solicitation-provisions-and-contract-clauses#DAFFARS_5352_223-9001 (last visited 3/28/24) [https://perma.cc/4A2X-HJ5Z?type=image].

Doc. 51-9 at 22. The Task Order supplemented this directive and provided additional details about the project and how AFRL and VERUS would interact for the duration of the contract. *See generally* Doc. 51-8. For example, the Task Order defined "base support" in a similar way as the IDIQ but referred to the use on a "non-interference basis" as including "Government-controlled working space, material, equipment, services . . . or other support." *Id.* at 23 ¶ 6(a).

In all instances, VERUS possessed sole discretion in determining how to conduct tests inside the chamber, including the orientation of equipment. UMFs 12[5]-17, 22[6]-23, 48. During the testing, AFRL was not to interfere with the anechoic chamber[7] nor was it permitted to manipulate the anechoic blocks as they were entirely within VERUS's control. UMFs 12, 14-17; Doc. 77 at 25:9-17, 32:19-33:2. This agreement to "non-interference" was literal and the government could not "interfere with laboratory testing or experimentation, under a contract." Doc. 51-7 at 9 (35:13-15).

---

[5] Citing to Jaramillo's testimony, Dean disputes the United States' characterization of the facts within UMF 12: "When VERUS used the anechoic chamber, it was in control of it and AFRL could not interfere with VERUS's use of it." Doc. 51 at 4 ¶ 12. Dean does not provide evidence to contest this statement; he references the contract language and Jaramillo's testimony in his brief. Doc. 52 at 3-4. During oral argument, Dean's counsel stated the United States "may have not had control of the day-to-day operations or hour-to-hour operations," but they controlled "the general scope of the work." Doc. 77 at 27:19-22, 23. Additionally, Dean's counsel admitted that during VERUS's testing, "outside personnel were not allowed in [the chamber]." *Id.* at 32:19-33:2.

[6] Disputed to the extent that Dean testified that while "Jennifer Sloane-Warren determined the layout of the chamber, she received input from AFRL," in the sense that she "interface[d] with AFRL." Doc. 52 at 5.

[7] The chamber is a large room with walls and the majority of the floor covered with anechoic cones and 3-by-3-foot Styrofoam cubes, or the blocks. Doc. 1 ¶ 14; see Docs. 51-2, 51-3, 51-5. These cones and blocks absorb the waves emitted from a high-powered electromagnetic source during a test—they are moveable and can be reconfigured for the requirements of the specific test being conducted. UMF 15. Dean walked on the blocks each time he worked in the chamber. UMF 33.

When VERUS was not using the chamber, AFRL staff would conduct periodic, surface-level safety inspections to assess the appearance of the lab. UMFs 49, 51[8]; *see* Doc. 51-10 at 4 (14:7-16:12). However, those employees were not obliged to test the blocks for safety, and Dean has not produced evidence indicating that it was AFRL's duty to do so. UMF 52; *see* Doc. 51-10 at 7 (30:11-14).

### B.       VERUS's Work in the Chamber and Dean's Injury

On November 15, 2019, Dean was working with Sara Strickland, an engineer, to move a table to the center of the chamber. UMF 1; Doc. 1 ¶ 12. As the pair moved the table, Strickland stepped on an unstable block which "caused it to tilt back and create a gap between the blocks." Doc. 1 at 3 ¶ 17; *see* UMF 5. Dean fell backwards into the opening, causing the table to fall on him while his leg was still lodged between the blocks. He broke his leg in the course the fall. Doc. 1 at 3 ¶ 18; UMF 5.

### C.       Dean's Administrative Claim

After suffering his injury, Dean submitted his administrative claim to the Air Force mid-March 2021. Doc. 1 at 1 ¶ 2; *see* Doc. 64-2. The relevant portion of the claim states:

> [Dean] was working inside Carlisle Building 323 at the Kirtland Air Force Base. [Dean] was helping to carry a table across the room. The floor of this room was comprised of 3-by-3 foot Styrofoam cubes. The cubes were not well-connected, leading to uneven gaps in the floor. While walking, [Dean]'s leg fell into one of the gaps in the floor. [Dean]'s leg became stuck in the gap, up to his knee, causing his leg to break.

Doc. 64-2 at 1. The Air Force issued its denial letter on February 25, 2022. Doc. 64-3. Dean then filed the instant complaint on March 9, 2022, for one count of negligence alleging the United States

---

[8] Disputed to the extent that John McCullough, the AFRL lab manager and safety representative, testified he does not test the blocks for safety, and he does not know anyone who does. UMFs 49-50; Doc. 52 at 6.

failed to keep its premises safe for visitors and invitees like Dean, failed to make "a reasonable inspection of the premises that would have revealed the dangerous condition of the unstable anechoic foam floor block," and failed to warn Dean of "the dangerous condition" of the block. Doc. 1 at 5 ¶¶ 31(a)-(c).

## II.     Procedural Background

The Government first filed its Motion for Summary Judgment for Lack of Subject Matter Jurisdiction, on August 1, 2023. Doc. 51. It subsequently filed the Motion to Dismiss for Lack of Subject Matter Jurisdiction due to Plaintiff's Failure to Exhaust Administrative Remedies on October 17, 2023. Doc. 64.

### A.     The United States' Motion to Dismiss

The United States asserts that Dean did not properly exhaust his administrative remedies sufficiently to put the government on notice of the specific theory alleged—i.e., the United States failed to test the stability of the anechoic foam blocks. Doc. 64 at 5, 8-11; *see Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (explaining a defendant could bring a facial attack on the complaint's allegations or a factual challenge to the facts that support subject matter jurisdiction), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 435, 437 (2001). The United States further maintains the assembly or arrangement of the blocks falls exclusively within VERUS's purview, it was not responsible for investigating the actions of non-VERUS employees, and Dean's administrative lacks any allegation of negligence on the part of the United States before or after the incident. Doc. 64 at 6. Dean responds by arguing he has not raised a new allegation of negligence and the facts in his administrative claim fairly imply his negligence cause of action. Doc. 65 at 4-11.

### B.     The United States' Motion for Summary Judgment

The United States also moves to dismiss Dean's complaint for lack of subject matter jurisdiction asserting Dean's claim falls outside of the United States' waiver of sovereign immunity under the FTCA for two reasons. *See* Fed. R. Civ. P. 12(b)(1); *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir. 1991). First, the Government claims that a private person would not be liable to Dean for the alleged negligence based on New Mexico law, Doc. 51 at 13-17, and, second, that the FTCA does not waive sovereign immunity for the alleged negligence of independent contractors. *Id.* at 17-24. Dean counters that his claim against the United States arises from allegations of the United States' tortious conduct, not VERUS's. Doc. 52 at 11; *see generally* Doc. 1. Thus, in Dean's view, the independent contractor exception does not shield the United States from liability. Doc. 52 at 1.

## DISCUSSION

The United States is immune from suit unless it waives sovereign immunity and consents to be sued; without that consent, the federal courts lack subject matter jurisdiction. *Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir. 2006). The FTCA waives this sovereign immunity and provides an exclusive avenue for relief in civil tort actions against the United States. But before suit can be filed, a plaintiff must exhaust their administrative remedies as required by 28 U.S.C. § 2675(a).[9] *See McNeil v. United States*, 508 U.S. 106, 113 (1993). That process requires the claimant provide the proper agency "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016) (quotation omitted). These notice requirements

---

[9] Section 2675(a) provides that "[a]n action shall not be instituted upon a claim against the United States for money damages for . . . personal injury or death . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and [the] claim shall have been finally denied by the agency in writing."

are jurisdictional and cannot be waived. *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005); *see* 28 U.S.C. § 1346(b). Once the federal agency has "finally denied" the claim, the claimant may institute an action against the United States. 28 U.S.C. § 2675.

**I.    The United States' Motion to Dismiss for Failure to State a Claim: Dean's administrative claim gave the United States sufficient notice that the anechoic foam blocks within the anechoic chamber were themselves dangerous conditions.**

The Tenth Circuit applies a pragmatic test to determine whether an administrative claim was sufficient and considers if "the claim's language 'serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct.'" *Staggs v. U.S. ex rel. Dep't of Health & Human Servs.*, 425 F.3d 881, 884 (10th Cir. 2005) (quoting *Trentadue*, 397 F.3d at 852). The Tenth Circuit also requires a claim "give notice of the underlying facts and circumstances rather than the exact grounds upon which [the claimant] seeks to hold the government liable." *Id.* (internal quotation marks omitted). Thus, a plaintiff is not required to provide a statement of a legal theory nor "elaborate *all* possible causes of action or theories of liability." *Trentadue*, 397 F.3d at 853 (emphasis added).

Here, Dean's administrative claim did not identify every theory of negligence included in his complaint, but he nevertheless provided notice of the facts and circumstances surrounding his injury. Dean's claim informed the Air Force that he was injured while working inside "Carlisle Building 323 at the Kirtland Air Force Base," on the floor of a room that was "comprised of 3-by-3 foot Styrofoam cubes" that "were not well-connected, leading to uneven gaps in the floor," and his "leg fell into one of the gaps in the floor," was stuck, and eventually broke. Doc. 64-2 at 1.

With the information in the administrative claim, Dean gave the United States fair notice to investigate the condition of the anechoic chamber's floor, the nature and stability of the blocks, and the cause of gaps in the floor of the chamber, as well as to decide whether the floor's

8

composition out of these blocks constituted a dangerous condition. Dean cannot have foreseen the specific legal details of this civil complaint when he filed this administrative claim with the Air Force; the United States has not cited a case that requires Dean to identify the specific act or omission giving rise to his negligence claim and the Court will not hold him to such a standard. *See Silva v. United States Dep't of the Air Force*, No. 19-937, 2021 U.S. Dist. LEXIS 253067, at *2-3, *11-12 (D.N.M. May 10, 2021) (holding the plaintiff's administrative claim describing her injury as, "due to contacting the slippery surface not adequately covered by the bath mat," was sufficient to alert the Air Force of her negligence claim that the Air Force failed "to provide a safe and reasonable non-slip surface of the shower or grab bars on walls or tub edge of the shower which would have prevented [the plaintiff] from slipping[.]"). Therefore, the Court finds the facts contained in Dean's administrative claim provided sufficient notice such that the United States could investigate whether it negligently failed to inspect the chamber and whether the blocks constituted a dangerous condition.

II.     **The United States' Motion for Summary Judgment: under New Mexico law, the United States is not liable for Dean's harm because it did not control the anechoic chamber or the performance of VERUS's work as an independent contractor.**

The FTCA provides a limited waiver of sovereign immunity for personal injury caused by the negligent act or omission "of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also Sheridan v. United States*, 487 U.S. 392, 398 (1988). Liability "hinges on whether a private person could be subject to state law liability under similar factual circumstances as those alleged against the government actor." *Hugo v. United States*, No.

21-305, 2021 U.S. Dist. LEXIS 203039, at *6 (D.N.M. Oct. 21, 2021).[10] Thus, Dean must establish

a viable negligence action under New Mexico law based on the United States' duty as an employer

of an independent contractor (VERUS) owed to the independent contractor's employee (Dean).[11]

In considering the matter, the Court notes that both New Mexico state courts and the Tenth

Circuit generally decline to impose a duty of ordinary care upon an employer for acts of an

independent contractor.[12] *See*, *e.g.*, *Valdez v. Home Depot USA, Inc.*, No. CIV 13-1239, 2015 U.S.

Dist. LEXIS 163293, at *34-35 (D.N.M. Nov. 25, 2015) ("[T]he employer of an independent

contractor is not liable for injuries to an employee of the independent contractor.") (citing *Valdez*

*v. Cillesson & Son, Inc.,* 1987-NMSC-015, ¶ 21, 734 P.2d 1258; *Sherman*, 2014-NMCA-026, ¶

8).  However, two exceptions to this nonliability exist: (1) when the employer controls the premises

---

[10] "Employee of the government," includes "officers or employees of any federal agency." 28 U.S.C § 2671. "Federal agency" encompasses "the military departments" of the United States, like the Air Force, but it "does not include any contractor with the United States." *Id.* So, the Air Force is considered an "[e]mployee of the government" because it is a federal agency.

[11] Under New Mexico law, "A negligence claim requires that the plaintiff establish four elements: (1) defendant's duty to the plaintiff, (2) breach of that duty, typically based on a reasonable standard of care, (3) injury to the plaintiff, and (4) the breach of duty as cause of the injury." *Zamora v. Saint Vincent Hosp.*, 2014-NMSC-035, ¶ 22, 335 P.3d 1243.

[12] Duty "is a question of law for the courts to decide." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 73 P.3d 181) (cleaned up). Usually, "[t]he duty of ordinary care applies unless the owner/occupier can establish a policy reason . . . that compels a limitation on the duty or an exemption from the duty to exercise ordinary care." *Rodriguez v. Del Sol Shopping Ctr. Assoc's., L.P.*, 2014-NMSC-014, ¶ 5, 326 F.3d 465. Within New Mexico, proprietary control is distinct from the "control" discussed as to the liability of an employer of independent contractors. This distinction is informed by the facts of each working relationship and New Mexico's rationale for this different treatment: "the independent contractor, free to achieve a legal result (set by [the employer]) by any means it chooses, bears the risk should that operation, negligently performed, cause physical harm to others." *Sherman v. Cimarex Energy Co.*, 2014-NMCA-026, ¶¶ 7, 8, 318 P.3d 729; *see, e.g., New Mexico Elec. Serv. Co. v. Montanez*, 1976-NMSC-028, ¶ 16, 551 P.2d 634 ("The employer generally hires an independent contractor to perform work that he is not equipped or trained to do. We see no reason why the employer should become the insurer of the employees of an independent contractor.").

on which the work is being performed, or (2) when the employer retains control over the independent contractor's performance of the work.[13] *Id.* at \*35; *see Pollard v. Westinghouse Elec. Corp.*, 1995-NMCA-038, ¶ 6, 895 P.2d 683.

The first exception requires an employer to maintain "some *specific* control over the premises" while the contractor is performing their work or *specific* control "over the instrumentality that proximately caused [the] employee's injury." *Requarth v. Brophy*, 1990-NMCA-116, ¶ 12, 801 P.2d 121 (emphasis added); *see, e.g., Tipton v. Texaco, Inc.*, 1985-NMSC-108, ¶¶ 19, 27, 712 P.2d 1351 (holding the jury should have been instructed to assess the oil well owner's control over job site to determine relative negligence based on injury caused by moving pipes). As to the second exception—whether an employer retained "at least some degree of control over the manner in which the work is done"—the Tenth Circuit has explained:

> It is not enough that [the employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*McDaniel v. United States*, 53 F. App'x 8, 13 (10th Cir. 2002) (quoting Restatement (Second) of Torts § 414 cmt. c (1965)); *Sherman*, 2014-NMCA-026, ¶ 14;) (quoting the same). If either of these exceptions apply, then "an employer of contractors on a jobsite has a duty of reasonable care to protect persons on the premises from unreasonably dangerous conditions, including employees of those contractors." *Hinger v. Parker & Parsley Petrol. Co.*, 1995-NMCA-069, ¶ 22, 902 P.3d 1033; *see Tipton*, 1985-NMSC-108, ¶ 20.

---

[13] The New Mexico Court of Appeals has recognized, "[t]hese two grounds for an employer's liability correspond to different sections of the Restatement (Second) of Torts (1965), Section 343 and Section 414, respectively." *Sherman*, 2014-NMCA-026, ¶ 8.

**1.  The United States' proprietary ownership of the chamber is not enough to establish it retained specific control over the chamber or the blocks.**

The parties do not dispute VERUS maintained total control over the chamber when completing its research and conducting tests. UMFs 12-13. For example, it is undisputed that VERUS employees solely controlled the orientation and movement of the equipment, cones, and the very blocks Dean walked upon when he was injured. UMFs 14-16. Further, there is no evidence that AFRL regulated the day-to-day or hour-to-hour operations of the chambers when VERUS was conducting its testing. UMFs 12-13, 20; Doc. 72 at 23:1-21, 27:19-22. Any individuals other than VERUS employees—or those permitted to assist with the testing—were not allowed to enter the chamber or otherwise interfere with VERUS's work in the chamber. UMFs 12, 17, 22; Doc. 51-7 at 9 (35:13-15). Accordingly, there is no evidence indicating the United States exercised control over the chamber during VERUS's performance of its work nor the blocks that caused Dean's injury. *See* UMFs 14-18, 20.

**2.  AFRL did not exert specific control over VERUS's manner of work or research.**

While AFRL generally supervised the progress of VERUS's work or had the authority to stop the work, it is undisputed that AFRL did not tell VERUS how to specifically conduct its research, orient the equipment and blocks in the room, or instruct its employees. UMFs 13-14, 16-17, 19, 22; Docs. 51-8 at 17-18; Doc. 51-9 at 15-16. Only VERUS employees directed and supervised Dean while he was in the chamber and Dean never interacted with an AFRL employee in the chamber prior to his injury. UMF 18-19, 38. Moreover, Dean has presented no evidence that AFRL retained some specific control or instruction as to how VERUS should complete its contracted work.  *See* Doc. 72 at 27:19-23. Dean has produced no evidence that VERUS was not free to do the work in its own way. UMF 17. Thus, the Court finds the United States did not retain

specific control over the performance of VERUS's work such that it owed Dean a duty of ordinary care related to its status as an employer.

## CONCLUSION

Dean properly administratively exhausted his negligence theory against the United States under the FTCA. For that reason, the Court denies the United States' motion to dismiss. Doc. 64. But, on the record before the Court, the undisputed facts demonstrate the United States exerted neither specific control of the chamber nor over the performance of the contract at the time Dean was injured. The United States had no duty to exercise ordinary care toward him as an employee of an independent contractor and is not liable for the harm that befell him. As a consequence, the Court is compelled to grant the motion for summary judgment. Doc. 51; *see Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (stating the plaintiff must "make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment"); *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) ("Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof.").

It is hereby ordered that summary judgment is entered in favor of the United States. Dean's claims are hereby dismissed with prejudice. The Court shall issue a Rule 58 judgment separately.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA